Judge Owsley
delivered the Opinion of the Court.
Many years ago., Belshe claiming title to a tract of land which was possessed by Barrett, brought an ejectment, and finally succeeded in recovering judgment against Barrett, for the land. Afterwards, Barrett applied to the court that rendered the judgment in the ejectment, and obtained an order appointing commissioners to value the improvements &c. according to the provisions of the. act of the legislature of 1797, concerning occupying: *591 claimants. When this order was made, it does not appear from the record that Belshe was present in court, but it appears that after the commissioners had reported that Belshe' appeared by his counsel, and took exceptions to the report and actually succeeded in causing the report to be, quashed. Several successive orders were afterwards made, appointing commissioners to value the improvements &c. under the same act, some of which appear to have been made by the consent of Belshe; and the report of the commissioners under, each order, except the last, was also quashed upon the exceptions taken by the counsel of Belshe. The last report brought Belshe in debt for improvements,.after crediting him for the rents charged against Barrett, the sum of $1,292 57 1-2, for which judgment was rendered in favor of Barrett. Upon this judgment, execution issued against the estate of Belshe, and he afterwards replevied it by giving bond and security as required by law. After the replevin bond became payable an execution issued thereon, against the estate of Belshe and the sureties named in the bond, and such proceedings have been since had as that all the personal estate of Belshe, the tract of land recovered by him in the ejectment and another tract owned by him, together with a tract owned by one of his sureties, and perhaps some other estate of the sureties have been actually sold by the sheriff, and there still remains of the judgment a considerable sum unpaid.
Belshe’s bill to be relieved from the balance of the judgment rendered for balance of the account of improvements and rents, and ta set aside the sale under the executions; wherein Barrett was the purchaser.
Having been thus stript of all his estate, Belshe exhibited his bill in equity, for the purpose of being relieved against the judgment which was rendered upon the report of the commissioners, and to he restored to the property which had been sold under the execution. He charges the property to have been purchased by Barrett, and that the report of the commissioners was obtained through his artifice and fraud, and that in truth, he was not such an occupant of the laud as to entitle him to pay for the improvements, under the act of 1797, concerning occupants, and that the order appointing the commissioners, was obtained by fraud and imposition upon the court.
Barrett’s answer.
.Decree of the -circuit court dismissing the bill.
Equity cannot revise or control the judgment of the court in the proceedings under the occupant laws, unless a case of fraud be shewn, and that complainant had no opportune of resisting it before the final decision in 1 hat proceeding in the court of law.
Barrett admits the property to have been purchased by him at the sale by the sherifF, under the execution, but denies having imposed upon the court in obtaining the order appointing the commissioners. He states that he was an occupant of the land, and believing himself to be entitled to the benefit of the provisions of the occupying claimant law of 1797; after the judgment was recovered against him in the ejectment, he' presented his evidence of title to the court, and without misrepresentation or fraud on his part, the court made the order appointing commissioners, and he denies that the commissioners were influenced by any artifice or fraud in him, to make their assessment or report. He contends that Belshe had ample opportunity to contest his right to be compensated for the improvements, under the act of 1797, before the commissioners reported, and he insists that he should not now be permitted to draw in question that matter, in a court of equity. He relies upon the judgment which was rendered upon the report of the commissioners and contests the right of Belshe to any relief.
On hearing, the court below dismissed Belshe’s hill, and from that decree he appealed.
We have discovered nothing in the record which, in our opinion, will authorize any relief against the judgment which was entered upon the report of the commissioners. Whether or not Barrett possessed such a title or claim to the land, as gave him a right to be paid for the improvements upon the land, according to the provisions of the act of 1797, concerning occupants, was a question proper to be decided by the court appointing the commissioners, and if after the judgment which that court rendered upon the commissioners report, it were competent under any circumstances, for Belshe to contest his right in a court of equity, nothing is perceived in the record of this case to authorise it. The record is totally destitute of evidence going to fix upon Barrett fraud, in obtaining the order appointing the commissioners, or improper conduct towards the commissioners whilst they were engaged in the duties assigned then? by the order. He is proved to *593 have done nothing more in applying to the court for the appointment of commissioners, than any honest occupant, believing himself to come within the provisions of the act, would do, by presenting the evidences of his title, and asking the court for an order appointing commissioners to assess his improvements &c. This, though absent when the first order was made, Belshe must have known had been done by Barrett, before the judgment was rendered upon the commissioner’s report. The report which was made by the commissioners under the first order, was set aside at his instance, and if not convinced as to the right of Barrett to such an order, he might have objected to the orders or some of them, which were thereafter made, and 1 hereby brought the question of right directly before the court. This, however, Belshe did not do; so that this failure to do so, must, in the absence .of evidence of fraud, be ascribed either to a voluntary waiver of •the question by him, or inexcusable neglect on his part; and whether the one or the other, lie cannot now be permitted to make the question in a court pf equity.
Equity cannot compel the plaintiff in an execution, issued on a judgment rendered for improvements under the occupant laws, who has purchased the tract recovered and all the other property of the Successful claimant, for a part thereof, to surrender any part of his purchases, or desist froni further proceedings on his execution.
*593 The result of Barrett’s having attempted to enforce the judgment which was rendered on the report of the commissioners, has indeed proved most ruinous to Belshe and his sureties. Belshe has not •only been deprived of the land to which he was adjudged in the ejectment to have title, hut all the balance of his property and most of that owned by his sureties, have been swept from them, and yet a considerable debt remains unpaid against him. The case is, therefore, one of extraordinary hardship, and eminently calculated to make a deep impression upon the sympathies .of the court. But it is not by indulging in feelings of that sort that this, or any case, brought before the court for adjudication, is to -be decided. We disclaim any thing like an absolute, capricious discretion to decide by the impulse of feeling, on the rights of litigants. The principles of law and the usages of courts of equity are the square and compass by which, in our decisions, we ■must be guided, and according to those principles and usages, we are constrained not to extend any *594 relief to Belshe. We have seen that the record furnishes no evidence of fraud against Barrett, in recovering the judgment which was rendered in his favor, and we know of no-principle which can, in the absence of fraud, authorize a court of equity to step in and compel one who has recovered judgment at law, to restore to the debtor the estate which, under the process of the court-of law, he may have fairly purchased, or that will authorize the court, after such a purchase, to relieve against what may remain unpaid of the judgment, because in point ■of actual value, the estate purchased may exceed the whole amount of the judgment, or because the demand for which the judgment was recovered, grew out of improvements upon the land so purchased. After recovering judgment at law, the person in whose favor it may be, has a legal right to enforce its collection; and unless there be an abuse of the process of the court, or some unfairness in the conduct of the plaintiff in the execution, courts of equity possess no power to interpose and stop the legal process.
Crittenden, for appellant; Wickliffe, for appellee.
The decree must be affirmed with cost.